**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 5 2013

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATHRYN JANE ROACHELL CHUNN,
KIMLA GREENE, on behalf of themselves, and
all others similarly situated

*Plaintiffs*

v.                                                      Civil Case No. 4:13-CV-199 BSM

EXXON MOBIL CORPORATION                                 **Jury Trial Demanded**
d/b/a EXXONMOBIL®
EXXONMOBILE PIPELINE COMPANY
EXXONMOBILE PIPELINE COMPANY, L.P.
MOBILE PIPELINE COMPANY                    This case assigned to District Judge Miller
                                           and to Magistrate Judge Kearney

*Defendants.*

**COMPLAINT – CLASS ACTION**

Come now the Plaintiffs, pursuant to Fed. R. Civ. P. 23(a) & (b), and U.S. E.D. L.R. 23.1, on behalf of herself and others similarly situated, and for their Complaint – Class Action, states as follows:

**I. INTRODUCTION & STATEMENT OF CASE**

1. Arkansas is known as the "natural" state for its pristine environment and safe living conditions for people. Oil pipeline spills are becoming well known publicly for the considerable damage caused to the physical environment and the substantial direct and consequential economic loss surrounding the pipeline spill. The Mayfield Exxon Pegasus Pipeline has spawned a direct, public knowledge in Arkansas that real property in close proximity to the Pegasus Pipeline is at risk for permanent damage. This Arkansas class action lawsuit involves the worst crude oil and tar sands spill in Arkansas history and directly impacts all individuals who reside by the ExxonMobile Pegasus Pipeline (referred to as "Pegasus

1

Pipeline" or "Pipeline"). The Pipeline transports Wabasca heavy crude (Western Canada) from Patoka Illinois, through the states of Arkansas, Missouri and to Nederlands, Texas. The Pipeline supplies crude oil from Canada to the Gulf Coast. The Exxon Pegasus pipeline was built in the 1940s. The Pipeline runs under the surface of physical property throughout the State of Arkansas, near watersheds, water resources and under the Arkansas River.

2.      On March 29, 2013, a section of the Pegasus Pipeline in Mayflower, Arkansas, was in an unsafe, defective and deficient condition presenting an immediate environmental harm. The Pipeline fractured and ruptured causing property and consequential damages and injuries. Plaintiffs bring this lawsuit to recover for a permanent diminishment in property value for being located near the unsafe and defective pipeline on behalf of all property owners similarly situated throughout the State of Arkansas who are in close proximity to the Pegasus Pipeline. The Pegasus Pipeline running throughout the state of Arkansas is most likely to be similarly situated and maintained under a predominating, common course of corporate policy, pattern, practice and conduct, which includes but is not limited to the same or similar inspection, maintenance, evaluation, operation and analysis. Additionally, due to Defendants' common course of corporate policy, pattern, practice and conduct concerning the Pegasus Pipeline, Defendants put at risk the homes and property not only in the Mayflower, Arkansas area and community, but also property similarly situated geographically along the Pegasus Pipeline in Arkansas. Exxon's common course of corporate policy, pattern, practice and conduct concerning the Pegasus Pipeline, which specifically caused damage and injury to persons and property in the Mayflower area and community also puts similarly situated pipeline at risk of fracture and rupture because of Defendants' unsafe, defective pipe and their negligent inspection, maintenance, evaluation, operation and analysis. Plaintiffs bring their lawsuit on behalf of themselves and others similarly

situated seeking diminution value of real property under nuisance and strict liability state law claims.

## II. PARTIES

3. Plaintiff Kathryn Jane Roachell Chunn resides at 38 Ledrick Circle, Mayflower, Faulkner County, Arkansas. Plaintiff Chunn has directly experienced personal and real property injury as a result of the Exxon Pegasus Pipeline failure.

4. Plaintiff Kimla Greene resides at 41 Ledrick Circle, Mayflower, Faulkner County, Arkansas. Plaintiff Greene has directly experienced personal and real property injury as a result of the Exxon Pegasus Pipeline failure.

5. Exxon Mobil Corporation, also known as ExxonMobile® (hereafter "Exxon"), has common proprietary interests ownership interests or joint ventures with Separate Defendants ExxonMobil Pipeline Company, Mobil Pipeline Company and ExxonMobile Pipeline, L.P., and upon information and belief, are involved with the ownership, operation and maintenance (or lack thereof) of the defective and unsafe Pegasus Pipeline.

6. Exxon is headquartered in Irving, Dallas County, Texas, incorporated in Delaware and is identified to be found by the Texas Secretary of State at 800 Bell Street, Room 2605, Houston, Harris, County, Texas. Exxon may be served through the Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Exxon publicly promotes and markets itself as the "world's largest publicly traded international oil and gas company." It engages in oil exploration, development, marketing, production, refining, transportation and exportation. It amasses revenues in the hundreds of billions each year and is considered the number one or one of the top revenue

earning companies in major financial magazines and reports. Exxon has had previous major oil spills and failures in other parts of the Country and has been fined by governmental agencies.

7. ExxonMobile Pipeline Company, L.P., ExxonMobile Pipeline Company (collectively EMPCO) and Mobile Pipeline Company are companies that upon information and belief own, maintain or operate the Pegasus Pipeline, are directly related to or are affiliated with each other, Exxon and ExxonMobil and have ownership interests in joint interest pipelines and operate proprietary and joint venture distribution terminals in the United States. EMPCO is located in Houston, Harris County, Texas. Mobile Pipeline Company is an affiliate of ExxonMobile Pipeline Company and operates a facility in Patoka, Illinois where it maintains documents pertaining to the corporate activities. It is also located in Houston, Harris County, Texas. Exxon, EMPCO and Mobile are collectively referred to hereinafter as Defendants.

8. At all times alleged herein, Defendants owned, designed, refined, manufactured, failed to repair, failed to maintain, failed to inspect, failed to retrofit, failed to remedy or recall, advertised, promoted, marketed, supplied, distributed, transported, piped, wholesaled and or otherwise sold crude oil through the State of Arkansas, Texas, Missouri and Illinois.

### III. JURISDICTION AND VENUE

9. This Court has specific and general *in personam* and *in rem* jurisdiction over Exxon. Exxon earns millions (if not billions) in revenue and profits from its economic activities in Arkansas and has real and personal property throughout the State of Arkansas, including this federal district. A substantial part of the wrongdoing alleged in this Complaint took place in Arkansas, Exxon is authorized to conduct business in the State of Arkansas and Exxon purposefully and systematically avails itself of the oil commodity, transportation and sale

markets of the State of Arkansas, which are sufficient bases for this Court to exercise jurisdiction over Exxon under traditional notions of fair play and substantial justice.

10. Venue is proper in this district pursuant to 28 §§ U.S.C. 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to the claims occurred in the Eastern District of Arkansas where Exxon has a substantial, ongoing, systemic physical and economic presence.

11. This Court has subject matter jurisdiction over this lawsuit. Plaintiffs bring only state law claims and do not raise any federal claim or federal question. There is complete federal diversity pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is a complete diversity of citizenship among the parties. Additionally, pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. § 1332(d), there are more than 100 class members in the states involved and the damages alleged are in excess of $5,000,000,00, exclusive of interest and costs in the aggregate amount in controversy, thus, original jurisdiction in this court is proper.

## IV. FACTUAL ALLEGATIONS

12. Defendants own and maintain the Pegasus Pipeline, which transports Wabasca crude oil and, upon information and belief, tar sands (with toxins) through the State of Arkansas. The Pegasus Pipeline between Corsicana, Texas and Patoka, Illinois was originally constructed in 1947 and 1948 encompassing 650 miles. It is 20-inch diameter pipeline, with a 0.312" wall thickness that has a 95,000 barrels per day capacity (a barrel of crude oil contains 42 gallons or 159 liters). The Pipeline is an API 5LX-42 pipe and contains both seamless pipe and low frequency electric resistance welded pipe. The Pipeline is buried two feet or twenty-four inches

underground through the four contiguous states with a distance of 18 miles between isolation valves.

13. Today, the Pipeline traverses an area from Nederlands, Texas through Arkansas, near Mayflower, north of Little Rock and continues upwards through Northeast Arkansas into Missouri and into Patoka, Illinois (approximately 850 miles).

14. In 2006, in order to maximize profits, the Defendants reversed the Pegasus Pipeline to increase the flow of crude oil southward from Canada to the Gulf Coast. The Defendants desired to transport larger amounts of Canadian crude tar sands, which is more abrasive to the Gulf Coast through the Pegasus Pipeline running through Illinois, Missouri, Arkansas and Texas. It is known in the industry that a change in the direction of oil flow in a pipeline can affect the hydraulic and stress demands on the pipeline and the abrasive quality of the hydrocarbon product can increase corrosion and deteriorate the quality of the pipe. The pipe was in a defective, unsafe condition and the Defendants' corporate profit-enhancing decision to run a higher volume and more abrasive crude hydrocarbon through the Pipeline put further stress demands on the defective pipe.

15. In 2009, Defendants increased the capacity of the Pipeline by 50% or 30,000 barrels including the reactivation of several pump stations along the pipeline. This reactivation and enhancement was to enable the transportation of additional Canadian crude from the Midwest to Gulf Coast refineries. The transportation of these types of tar sands imposes greater risks to pipeline integrity, including greater corrosive effects on pipelines, which are defective and unsafe and pose risks to people and property in close proximity to the Pipeline. The Pipeline was and has not been properly and adequately inspected or maintained to ensure the safe

transport of crude oil and/or tar sands through the entire route of the Pegasus Pipeline traversing through Arkansas.

16. After this reversal of flow and increase in crude oil capacity, hydraulic and stress demands increased on the pipeline weakening the pipeline creating a further unsafe and unreasonably dangerous condition, which major disaster and pipeline fracture and rupture was inevitable. On or around March 29, 2013, a major, catastrophic break occurred in the Pipeline near Mayflower in Faulkner County, Arkansas, near mile-post 315, causing several thousands of barrels of oil to be released into the nearby community adjacent to the Pipeline (and in excess of 19,000 barrels). The release of the oil affected a large area around Mayflower, including the Plaintiffs' property. The crude oil migrated into the North Woods Subdivision along North Starlite Road into a bar ditch adjacent to a Union Pacific Railroad line, into a creek and into a tributary to a cove of Lake Conway, which is also a tributary to the Arkansas River. The release of the oil due to Defendants' unsafe and defective pipeline running through the State of Arkansas caused an extensive, continous and nationally publicized evacuation of people from the real property, contaminated real property, migrated into water sources and impacted air quality. The environmental footprint of the Pegasus Pipeline for diminishment of real property value extends, at minimum, thousands of feet from the pipeline.

17. The Pegasus Pipeline running throughout the State of Arkansas is most likely to be similarly situated and maintained in a defective, unsafe condition under a predominating, common course of corporate policy, pattern, practice and conduct which includes but is not limited to the same or similar inspection, maintenance, evaluation, operation and analysis.

18. This predominating, common course of Defendants' corporate policy, pattern, practice and conduct concerning the Pegasus Pipeline which specifically caused damage and

injury to persons and property in the Mayflower area and community and also puts similarly situated pipeline at risk of fracture and rupture because of the unsafe, defective condition of the Defendants' Pipeline and the corporate Defendants' negligent inspection, maintenance, evaluation, operation and analysis. The property owners in Arkansas along the Pegasus Pipeline have decreased real property damage because their property is located in close proximity to an unsafe and defective pipeline, which has caused the worst oil spill in Arkansas history contaminating soil, impacting neighborhoods, forcing evacuation, migrating into surface and underground water sources and impacting air quality. All of these environmental factors are critical factors in real property valuation and the enjoyment and use of real property in the State of Arkansas.

19. Due to Defendants' unsafe, defective Pipeline and common course of corporate policy, pattern, practice and conduct concerning their Pipeline, all persons who owned real property as of March 29, 2013, situated, at a minimum, within a 3,000 feet radius of the Pegasus Pipeline easement in the State of Arkansas are directly impacted and the value of their real property is diminished in a fairly uniform amount along the geographic course of the Pipeline.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

20. Throughout the time period relevant to this action, Defendants affirmatively concealed from Plaintiffs and other class members the defects with the Pegasus Pipeline described herein and its unsafe condition. Defendants kept Plaintiffs and other class members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiffs, nor the other class members could have discovered the defect, even upon reasonable exercise of diligence.

21. Defendants were aware of the problem with their Pipeline and continued to utilize the Pipeline with increased capacity with knowledge that the pipeline was defective and unsafe in its condition to transport crude oil southward from Canada to the Gulf Coast.

## VI. CLASS ACTION ALLEGATIONS

22. Plaintiffs bring this claim for themselves and for all others similarly situated to obtain monetary relief pursuant to Fed. R. Civ. P. 23(a) and (b) and U.S. E.D. Ark. L.R. 23.1. Plaintiffs seek to certify this lawsuit as a class action and to be appointed as the class representatives to bring this collective action.

23. The class is comprised of "all persons who owned real property as of March 29, 2013, in the State of Arkansas, situated within a 3,000 feet radius of the Pegasus Pipeline without an easement on their real property." The class members may be identified with precision and by objective criteria. The exact number of class members is unknown at this time, but the approximate size of the class is in the thousands. Thus, under Fed. R. Civ. P. 23(a)(1), the class is so numerous that joinder of all members is impracticable. Further, Plaintiffs bring a sub-class for "all persons who owned real property as of March 29, 2013, in the State of Arkansas, with a Pegasus Pipeline easement on their real property."

24. Pursuant to Fed. R. Civ. P. 23(a)(2) and E.D. L.R. 23(2)(b)(iii), there are questions of law or fact common to the class members. The class members reside by Defendants' unsafe and defective Pipeline, which is hazardous to life, property and the environment. The claims of the Plaintiffs and class members arise from a common nucleus of operative facts relevant to each class member and each member of the designated class sues under common legal theories. Common issues of law or fact for the class include, but are not limited to:

9

    (a)    Whether the Pegasus Pipeline is a private nuisance?

    (b)    Whether Defendants are strictly liable for diminished real property value for class members in close proximity to the Pegasus Pipeline?

    (c)    Whether Defendants' Pegasus Pipeline interferes with the value of class members' real property?

    (d)    Whether Defendants' Pegasus Pipeline diminishes the value of class members' real property?

    (e)    What is the measure of class-wide damages?

25. Pursuant to Fed. R. Civ. P. 23(a)(3), the claims of the proposed class representatives are typical of the claims for the rest of the class members. There is common liability and a common wrongful conduct by the Defendants applicable to all class members. Further, the defenses interposed by the Defendants are expected to be common toward the class members.

26. Pursuant to Fed. R. Civ. P. 23(a)(4), the representative parties will fairly and adequately represent and protect the interests of the class members. Pursuant to E.D. L.R. 23.1(b)(ii), the proposed class representatives will fairly and adequately represent the interests of the class members because the class members reside near the Pegasus Pipeline, their real property value has declined due to the Defendants' defective unsafe Pipeline and common course of corporate policy, pattern, practice and conduct concerning the Pegasus Pipeline and because the class representatives bring this lawsuit for the benefit of and to recover for affected class members.

27. Moreover, the class representatives have retained counsel to represent themselves and class members who have extensive experience representing parties and class actions

involving, mass torts and property claims, and who have knowledge and experience of the law and claims presented in this lawsuit and the procedural nature of Rule 23, as a procedural mechanism to bring a lawsuit to decide a common liability for and bring relief for a group of affected persons.

28.   Pursuant to Fed. R. Civ. P. 23(b)(1)(A) & (B), this lawsuit should be certified as a class action because individually affected members who prosecute separate actions would cause multiplicity of litigation, there would be risk of inconsistent findings on the same set of operative facts of liability, there would be inconsistent and varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants and individual adjudications would as a practical matter affect the interests and rights of individual persons not made a party to this lawsuit.

29.   Pursuant to Fed. R. Civ. P. 23(b)(3), the common questions of law and fact predominate over any questions affecting individual members. Further, maintaining this lawsuit as a collective action is a superior means of litigating this case because it eliminates multiple lawsuits involving the same operative set of liability facts, multiple litigation with the same witnesses and Defendants, risk of inconsistent adjudication and standards and preserves the rights of individuals who might be affected by disposition of an individual lawsuit, of which they are not a party.

30.   Plaintiffs respectfully bring this claim as a class action for the diminishment of class members' real property.

## VII. CLAIMS FOR RELIEF

### *A. Strict (Absolute) Liability*

31. Plaintiffs reallege the preceding paragraphs and incorporate them by reference herein as though stated word-for-word.

32. Defendants are strictly liable for ultra-hazardous conditions that proximately cause injuries to people. Pipelines carrying crude oil or other substances such as tar sands with toxins under high pressure located in close proximity to houses where people reside, live and breathe air and to residential drinking water resources is an immediate and ultra-hazardous condition presenting an immediate risk and serious danger to people's lives, property and the environment. The activity creates a zone of danger to those in close proximity to the Pipeline and permanent diminishment in the value of the surrounding real property.

33. At all relevant times alleged herein, Defendants owned and failed to inspect and maintain their unsafe and defective Pipeline, which was transporting crude oil and other substances such as Canadian tar sands (with toxins) from Patoka, Illinois to Nederland, Texas and through a large section of the State of Arkansas.

34. Defendants' unsafe and defective pipeline and wrongful common course of corporate policy, pattern, practice and conduct, which includes, but is not limited to, failure to maintain, inspect, evaluate, operate and analyze the defective pipeline has resulted and directly and proximately caused and resulted in damages to the Plaintiffs and class members from permanent diminishment of the value of real property.

35. Plaintiffs and the class members respectfully pray for damages caused by Defendants' strict (absolute) liability in an amount in excess of $75,000.00, exclusive of costs

and interest for individual damages and in excess of $5,000,000.00, exclusive of costs and interest for damages in the aggregate.

### *B. Nuisance*

36. Plaintiffs reallege the preceding paragraphs and incorporate them by reference herein as though stated word-for-word.

37. Nuisance is an unreasonable interference or invasion of one's person or real property which interferes with the person's life and use and enjoyment of the real property.

38. At all relevant times alleged herein, Defendants owned and failed to inspect and maintain their defective and unsafe Pipeline, which was transporting crude oil and other substances such as tar sands with toxins from Patoka, Illinois to Nederland, Texas and through a large section of the State of Arkansas.

39. Defendants' unsafe and defective pipeline and wrongful common course of corporate policy, pattern, practice and conduct, which includes, but is not limited to, failing to maintain, inspect, evaluate, operate and analyze the defective pipeline has directly and permanently interfered with the environment and Plaintiffs and class members' use, enjoyment and value of their real property.

40. Defendants' unsafe and defective pipeline and common course of corporate policy, pattern, practice and conduct, which includes, but is not limited to, failure to maintain, inspect, evaluate, operate and analyze the defective pipeline has resulted and directly and proximately caused and resulted in damages to the Plaintiffs and class members from permanent diminishment of the value of real property.

41. Plaintiffs and the class members respectfully pray for damages caused by Defendants' nuisance in an amount in excess of $75,000.00, exclusive of costs and interest for

individual damages and in excess of $5,000,000.00, exclusive of costs and interest for damages in the aggregate.

## VIII. PROXIMATE CAUSATION

42. The facts and allegations recited above are incorporated by reference and made a part hereof as though set out verbatim.

43. As a direct and proximate result of the wrongful and tortious acts and/or omissions of the Defendants as described herein, Plaintiffs and the class members suffered damages as set forth herein for which Defendants are liable.

## IX. INJURIES AND COMPENSATORY DAMAGES

44. As a result of the wrongful and tortious acts and omissions of the Defendants, Plaintiffs and the class members sustained permanent diminishment of value to real property.

45. Plaintiffs seek compensation for the damages suffered by themselves and members of the class because of the Defendants' conduct, including but not limited to:

    (a) damages for loss and permanent diminishment in value of real property; and

    (b) all other compensatory and consequential damages allowed by law.

46. The injuries and damages described herein have been suffered in the past and will continue in the future.

## X. PUNITIVE DAMAGES

47. Plaintiffs incorporate by reference herein all previous paragraphs herein as though stated fully word-for-word for each cause of action.

48. Plaintiffs and the members of the class are entitled to punitive damages for Defendants' conduct that occurred under circumstances where their conduct would naturally and

probably result in injury or damages to Plaintiffs and class members, and Defendants allowed said acts or omissions to be committed in reckless disregard of the consequences to Plaintiffs and class members.

## XI. DEMAND FOR JURY TRIAL

49. Pursuant to Ark. R. Civ. P. 38, Fed. R. Civ. P. 38, Ark. Const. Art. 2, § 7, Ark. Code Ann. § 16-64-103, Plaintiffs hereby demand a trial by jury of all issues of fact.

## XII. DEMAND AND PRAYER

50. Plaintiffs respectfully pray this Court enter orders and judgment against Defendants as follows:

(a) For an order certifying this lawsuit to proceed as a class action;

(b) For an order appointing Plaintiffs as Class Representatives and appointing their counsel as counsel for all Class members;

(c) For compensatory damages for each Class member;

(d) For punitive damages for the Class;

(e) For pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(f) For costs, expenses and fees;

(g) For attorney's fees; and

(h) For all other relief deemed, equitable, appropriate and just.

Respectfully submitted,

**DUNCAN FIRM, P.A.**

By: _____
Phillip Duncan, ABN #74039
Richard Quintus, ABN #2000078
William Rob Pointer, ABN #2007216
Justin C. Zachary, ABN #2010162
DUNCAN FIRM, P.A.
900 South Shackleford Road, Suite 725
Little Rock, Arkansas 72211
Telephone: 501-228-7600
Facsimile: 501-228-0415
phillip@duncanfirm.com
richard@duncanfirm.com
rob@duncanfirm.com
justin@duncanfirm.com

-and-

**THRASH LAW FIRM, P.A.**

_____
Thomas P. Thrash, ABN #80147
Marcus N. Bozeman, ABN #95287
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, Arkansas 72201
Telephone: 501-374-1058
Facsimile: 501-374-2222
tomthrash@sbcglobal.net
bozemanmarcus@sbcglobal.net

16